## UNITED STATES et al. v. PENNSYLVANIA SALT MFG. CO.

Circuit Court of Appeals, Third Circuit. February 1, 1929.

No. 3849.

See, also, 16 F.(2d) 476.

George W. Coles, U. S. Atty., Mark Thatcher, Asst. U. S. Atty., and M. Hampton Todd, all of Philadelphia, Pa., and Ralph H. Hallett, of Washington, D. C., and Chauncey G. Parker, of Newark, N. J., for appellants.

Wm. Findlay Brown, Charles B. Downs, and John F. Lewis, all of Philadelphia, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below the United States and Merchants' Warehouse Company, hereafter called government, filed a bill in equity against the Pennsylvania Salt Manufacturing Company, a corporation of Pennsylvania, hereafter styled salt company, to enjoin the latter from mooring vessels to a certain bulkhead. On final hearing that court dismissed the bill, whereupon the plaintiff took this appeal.

The proofs in the case were that for

many years the Salt Company owned and operated in Philadelphia, between Porter and Oregon avenues, a manufacturing plant abutting on the Delaware river. Its south pier, known as pier No. 94, was owned and maintained by the salt company. It was a solid earth pier, supported by timber crib work extending into the navigable waters of the river. It had a dock or slip along its south side. In July, 1918, government began building an army quartermaster's terminal on certain piers and docks, at the foot of Oregon avenue, owned by it, and which were adjacent to the salt company's property. As the work went on and it became desirable to broaden and improve the old slip between the government's new north pier No. 96 and said pier No. 94 of the salt company, government desired to acquire from salt company a 13-foot wide strip from the south side of its existing solid earth pier No. 94; and an agreement was made by which salt company agreed to sell to government, in consideration of $2,500, the desired strip, viz., 13 feet 4¼ inches in width by 623 feet 4 inches in length, along the southerly line of salt company's pier No. 94, such strip to be removed in widening the slip between said pier 94 and government's pier No. 96. As this was done, it became necessary to build a bulkhead on the salt company's property, along the new southerly line thereof, to form the new side of its pier; and an agreement dated January 5, 1920, was duly entered into by the parties, which recited:

"1. The Company hereby grants to the Government the right and privilege to construct on the property of the company along the southerly line thereof on the Delaware River and the Government hereby agrees to construct and maintain a bulkhead for the purpose of retaining the earth along said boundary line for the maintenance and protection of the waterway, dock, or slip to be opened, constructed, and maintained by the Government between said Bulkhead (marked 'Pier G') and the Government Northerly pier (marked 'Pier C') on plan hereto attached and made part hereof, said bulkhead to be constructed out to and including the end of the Company's Pier 94 as at present exists in accordance with plans hereto attached.

"6. The Company hereby expressly reserves unto itself, its successors and assigns, the right and privilege to use said bulkhead and structure so built by the Government upon the Company's land in any lawful manner.

"7. It is further agreed that the Company shall have the right and privilege at any time hereafter to extend said bulkhead into the Delaware River to such line as is now or may be hereafter established as the pier head line by the Secretary of War or any other properly constituted authority."

By deed of November 24, 1922, the strip was conveyed by the salt company to the government, wherein it was provided:

"It being understood that the execution and delivery of this deed does not waive the privileges or affect the obligations of the parties expressly granted or imposed by the terms of a certain contract entered into between the grantor herein and the Constructing Quartermaster of the Philadelphia Terminal, dated January 5, 1920, and Recorded in the Office of the Recorder of Deeds for the City and County of Philadelphia in Deed Book J. M. H. No. ——, p. ——, etc., for the construction and maintenance of a Bulkhead or Retaining Wall on Grantor's land adjoining the property herein conveyed."

It further appears that, as the bulkhead was being constructed, the salt company designated certain places on its top where cleats and moving posts, which it furnished, were embedded in concrete by government. In 1922 the United States, acting by the United States Shipping Board Emergency Fleet Corporation, leased its terminal property to the Merchants' Warehouse Company, which operates the property as a general water terminal. The latter company objected to salt company bringing a vessel into the slip and mooring the same to the bulkhead, and thereafter a bill, afterwards amended, was filed by the United States and the Merchants' Warehouse Company, wherein was prayed a perpetual injunction against salt company from using the slip by vessel entry, from vessel passage through its waters, from permitting all vessels from mooring to the bulkhead on salt company's land for the purpose of unloading, and "generally from occupying or using or inviting, permitting, soliciting, or encouraging others, to occupy or use the said slip or any part thereof, or the waters thereof or therein, or the land underlying the same, or any part thereof, for any purpose whatsoever."

■■ We are of opinion that, under the facts, agreements, deed, etc., the court below committed no error in dismissing the bill, and in support of such view we note these facts. The old slip formed part of the navigable waters of the Delaware river.

Salt company, as an abutting owner, had free access to such navigable water. When the United States widened and lengthened such slip by using and submerging its own land, and the strip it acquired from the salt company, it thereby subjected the same to public navigation. As an abutting owner upon said enlarged slip, and by the express agreement of the government, the salt company has the same right which every landowner abutting on navigable waters has, namely, free access thereto, and a consequent right to moor vessels to the bulkhead built on its own land. The decree of the court below dismissing the bill is therefore affirmed.